**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERI FLANAGAN, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 17-CV-315-GKF-JFJ |
| ACCESS MIDSTREAM PARTNERS, L.P. (n/k/a WILLIAMS PARTNERS L.P.); CHESAPEAKE ENERGY CORPORATION; CHESAPEAKE OPERATING, L.L.C.; CHESAPEAKE ENERGY MARKETING, INC.; and CHESAPEAKE MIDSTREAM PARTNERS, LP, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the court are defendants' Motions to Dismiss or Transfer [Doc. Nos. 57, 59]. For the reasons set forth below, the motions are denied as to dismissal, but granted as to transfer to the Fort Worth Division of the United States District Court for the Northern District of Texas.

**I.    Background**

The dispute in this case is whether Chesapeake and its affiliates violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, by artificially inflating cost-of-service deductions from royalty payments owed to Texas royalty owners.

On June 2, 2017, Teri Flanagan filed this suit against defendants, alleging claims under RICO, as well as for unjust enrichment, civil conspiracy, tortious interference with contract, and breach of lease. [Doc. No. 2]. Flanagan alleged that defendants devised a scheme to artificially inflate cost-of-service deductions from royalty payments owed to Texas royalty owners. These royalty payments were owed under a lease between Flanagan and Chesapeake Exploration,

L.L.C. The lease contained a forum selection clause stating "[v]enue for any dispute arising under this Lease shall lie in Tarrant County, Texas, where all obligations under this Lease are performable." [Doc. No. 35-1, p. 4, ¶ 18]. Chesapeake Exploration was originally a named defendant in this action. [Doc. No. 2]. However, when Chesapeake Exploration filed a motion to dismiss or transfer based on the forum selection clause, Flanagan dismissed it from the case and filed an Amended Complaint dispensing with her contract-based claims and preserving only her RICO claim. [Doc. Nos. 52, 53].

Although non-parties to the lease, the remaining defendants seek to invoke the forum selection clause in order to dismiss or transfer this case. On August 18, 2017, defendants filed motions to dismiss or transfer under FED. R. CIV. P. 12(b)(6) and the doctrine of *forum non conveniens*, respectively. [Doc. Nos. 57, 59].

**II.     Standard**

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). There are two types of forum selection clauses—permissive and mandatory. *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). The appropriate vehicle for enforcing a forum selection clause is either 28 U.S.C. § 1404(a) or *forum non conveniens*, depending on whether the destination forum is federal or nonfederal. *Atl. Marine Constr. Co. v. Dist. Court for the W. Dist. of Tex.*, 134 S.Ct. 568, 579–80 (2013). A valid forum selection clause alters the typical interest-balancing analysis by shifting the burden to the plaintiff and requiring the court to consider only the public-interest factors. *Id* at 581–83.

**III.    Analysis**

The success of defendants' motions to dismiss or transfer hinges on three central issues: (1) whether defendants as non-parties to the lease may benefit from the forum selection clause; (2) whether the forum selection clause applies to Flanagan's RICO claim; and (3) whether the language of the clause is mandatory or permissive.  Defendants prevail on all three issues.

*As a threshold matter*, although defendants have requested either dismissal or transfer, the appropriate vehicle here is transfer under 28 U.S.C. § 1404(a).  The forum selection clause in this case refers to a specific county—Tarrant County.  Under Texas law, reference to a specific county encompasses both federal and state courts.  *See Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400 (5th Cir. 2008) (determining that "the clause at hand, providing for venue in a specific county, permit[ted] venue in either federal or state court, because a federal courthouse is located in that county"); *Collin County v. Siemens Business Services, Inc.*, 250 Fed. Appx. 45, 50–54 (5th Cir. 2007) (indicating that clause granting exclusive venue "in Collin County, Texas" would have permitted transfer to federal court, had there been a federal courthouse located in Collin County).  Here, the Fort Worth Division of the United States District Court for the Northern District of Texas sits in Tarrant County, Texas.  As a result, transfer to that court under 28 U.S.C. § 1404(a) is the appropriate vehicle for enforcing the forum selection clause.  *See Atl. Marine*, 134 S.Ct. at 579 ("Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.").

*First*, defendants are not deprived of the benefit of the forum-selection clause simply because they are non-parties to the lease.  "When the alleged conduct of non-parties to a contract is closely related to a contractual relationship, all the participants, parties and non-parties, should

3

benefit from . . . any forum selection clause[].ˮ *Keenan v. GAP Exploration, Ltd.*, No. 09-CV-240-JHP-FHM, 2010 WL 1330334, at *4 (N.D. Okla. Mar. 29, 2010); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Coastal Steel v. Tilghman Wheelabrator LTD.*, 709 F.2d 190, 202–03 (3rd Cir. 1983). Here, defendants are closely related: Chesapeake Operating produced and sold gas from Texas leases as Chesapeake Explorationʼs agent and operator; Chesapeake Marketing purchased gas under the lease from Chesapeake Operating; Access Midstream provided gas gathering services for Chesapeake Marketing; and all of the Chesapeake entities are wholly owned subsidiaries of Chesapeake Energy Corporation. [Doc. No. 53, pp. 6–8, 10–11, ¶¶ 19–25, 31–32]. Indeed, the gravamen of Flanaganʼs complaint is that defendants—as affiliated entities—conspired to artificially inflate cost-of-service deductions from royalty payments owed to Texas royalty owners. "All [defendants are] doing in invoking the forum selection clause . . . is accepting one of the premises of [Flanaganʼs] suit." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). In addition, the court will not permit Flanagan to avoid her contractual choice of forum simply by amending her complaint to only include non-parties and non-contractual claims. *See Mann v. Auto Protection Corp.*, 777 F. Supp. 2d 1234, 1243 (D.N.M. 2011) (stating that "it would be unfair to allow Plaintiff to evade his contractual choice of forum by asserting tort claims or naming parties who are not part[ies]" to the agreement). As a result, the court concludes that defendants are "closely related" non-parties who benefit from the forum selection clause.

*Second*, the forum selection clause applies to Flanaganʼs RICO claim. "[C]ourts have interpreted forum-selection clauses broadly to govern freestanding, non-contract claims." *Presbyterian Healthcare v. Goldman Sachs & Co.*, 122 F. Supp. 3d 1157, 1203 (D.N.M. 2015). "[W]here . . . claims ultimately depend on the existence of a contractual relationship . . . such

claims are covered by a contractually-based forum selection clause, despite the pleading of alternative non-contractual theories of liability." *See Mann*, 777 F. Supp. 2d at 1243 (internal quotation marks omitted); *accord Presbyterian Healthcare*, 122 F. Supp. 3d at 1192; *Sun Specialized Heavy Haul, LLC v. Ace Heavy Haul, LLC*, No. 16-CV-491-GKF-PJC, 2016 WL 4942333, at *3 (N.D. Okla. Sept. 13, 2016). The forum selection clause in this case broadly governs "any dispute arising under" the lease. [Doc. No. 35-1, p. 4, ¶ 18]. Courts have concluded that such language encompasses non-contract claims, including RICO claims. *See Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 3057198, at *1 (D. Colo. Jul. 7, 2014) (concluding that plaintiff's RICO claim fell within a forum-selection clause covering "litigation arising in connection with" services); *Blixseth v. Disilvestri*, No. 11-22459-CIV-SEITZ/SIMONTON, 2013 WL 12063940, at *14 (S.D. Fla. Jan. 31, 2013) (finding that a mandatory forum selection clause applied to plaintiffs' RICO claims); *Presbyterian Healthcare*, 122 F. Supp. 3d at 1198 (interpreting "arising out of" to mean "originating from, and bearing causal connection with, the contract," and concluding that non-contract claims fell within such language). Here, the central issue in Flanagan's RICO claim is whether defendants conspired to artificially inflate cost-of-service deductions from royalty payments owed to Texas royalty owners. Admittedly, this claim is broader than a simple breach of contract claim. However, it still involves the same operative facts and will require the finder of fact to interpret the lease agreement to determine whether the cost-of-service deductions were made in accordance therewith. Flanagan argues that there are no contract-based claims to anchor her RICO suit to the forum selection clause. However her complaint did include exactly these types of anchor claims—until she amended them away. *See* [Doc. Nos. 2 (original complaint), 53 (amended complaint)]. As noted above, "it would be unfair to allow Plaintiff to evade . . . contractual

5

choice of forum by asserting [non-contract] claims." *Mann*, 777 F. Supp. 2d at 1243. Therefore, the court holds that the forum selection clause applies to Flanagan's RICO claim.

*Third*, the language of the forum selection clause is mandatory. "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause [is] mandatory." *Am. Soda, LLC v. U.S. Filter Wastewater Grp.*, 428 F.3d 921, 927 (10th Cir. 2005). The clause here does both: it designates Tarrant County, Texas as the venue for suit, and it includes mandatory language of exclusion—the term "shall." Courts have repeatedly held the phrase "shall lie" to establish the creation of a mandatory forum selection clause. *See, e.g.*, *Excell*, 106 F.3d at 321 (construing as mandatory a forum selection clause stating that "venue shall lie in the County of El Paso, Colorado"); *Am. Soda*, 428 F.3d at 927 n.4; *Triple 'S' Operating Co., LLC v. Ezpawn Okla., Inc.*, No. 10-CV-0328-CVE-FHM, 2010 WL 2690376, at *2–4 (N.D. Okla. June 30, 2010).

*As a final matter,* because the clause is mandatory Flanagan bears a "heavy burden" in opposing enforcement of this forum-selection clause. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992). "As the party acting in violation of the forum-selection clause," Flanagan "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor" transfer. *Atl. Marine*, 134 S.Ct. at 583. Relevant factors typically include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted); *accord I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, No. 08-CV-0510-CVE-PJC, 2009 WL 5101761, at *1 (N.D. Okla. Dec. 17, 2009). "In all but the most

unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 134 S.Ct. at 583.

This is not an unusual case. Flanagan presents no evidence "that administrative difficulties or court congestion will prevent . . . recei[pt] [of] a timely and fair trial in" the Northern District of Texas. *See Cardoni v. Propserity Bank*, No. 14-CV-0319-CVE-PJC, 2014 WL 3369334, at *8 (N.D. Okla. July 9, 2014). Nor does she dispute that Texas courts have a greater interest in applying Texas law, which governs the Lease. Federal courts in Texas have routinely adjudicated claims involving Chesapeake's cost-of-service deductions from royalty payments. *See, e.g., Warren v. Chesapeake Exploration, LLC*, No. 3:12-cv-03581-M, 2013 WL 2233950 (N.D. Tex. May 20, 2013); *Texas Lone Star Petroleum Corp. v. Chesapeake Operating, Inc.*, Civil Action No. 2:14-CV-331, 2016 WL 6677939 (S.D. Tex. Nov. 14, 2016). In fact, this very case began in Texas, in *Flanagan et al. v. Chesapeake Exploration, LLC, et al.*, Case No. 3:15-cv-00222-B (N.D. Tex.). There, Flanagan alleged various Chesapeake entities engaged in "sham transactions" to deprive them of royalty payments. [Doc. No. 13, Civil Action No. 3:15-CV-0222-B (N.D. Tex. Aug. 10, 2015)]. After substantial motions practice, she sought leave to amend her complaint and include allegations related to the inflation of production cost deductions, which are now the subject of this suit. [Doc. Nos. 47, 47-1, Civil Action No. 3:15-CV-0222-B (N.D. Tex.)]. The Chesapeake entities opposed that effort, arguing the proposed amendment: (1) violated the court-ordered amendment deadline; (2) would be futile; (3) prejudiced the defendants; and (4) would disrupt the court's administration of its docket. [Doc. No. 48, Civil Action No. 3:15-CV-0222-B (N.D. Tex.)]. The court agreed with Chesapeake, and denied leave to amend for failure to show "good cause" under FED. R. CIV. P. 16(b). [Doc. No. 59, Civil Action No. 3:15-CV-0222-B (N.D. Tex.)]. Shortly thereafter, the parties filed a joint

stipulation of dismissal without prejudice. [Doc. No. 60, Civil Action No. 3:15-CV-0222-B (N.D. Tex.)]. Flanagan now seeks a more favorable forum. However, nothing about this case seriously involves Oklahoma: it is brought by a Texas plaintiff; involves a Texas lease; concerns royalties from Texas wells; involves Texas law; and is brought on behalf of a class of Texas royalty owners. Indeed, it is unclear from the face of the Amended Complaint what, if any, relevant conduct took place in Oklahoma. For these reasons, the court transfers this action to the Fort Worth Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## IV. Conclusion

WHEREFORE, defendants' Motions to Dismiss or Transfer [Doc. Nos. 57, 59] are denied as to dismissal, but granted as to transfer to the Fort Worth Division of the United States District Court for the Northern District of Texas.

IT IS SO ORDERED this 28th day of September, 2017.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT